Case No. 241936, Joshua Steeb v. Mike Ehart et al., argument not to exceed 15 minutes per side. Mr. Heron, you may proceed for the appellant. Good morning. May it please the Court, I'm Jeff Heron. I represent the appellant, Joshua Steeb. I have reserved three minutes of my time. I believe I should begin and focus on the core question in this case, whether the rescuer doctrine has any role in the state-created danger doctrine. The district court held it did not. I came to the district court with two unpublished district court decisions saying that it does have a role. And that's the extent of the authority that I've located. It seems to be the extent of the authority that the appellees were able to locate or that the district court was able to locate. This court, in conducting a de novo review, it seems to me has an open field. There are not a bunch of cases to cite. I'm not a case name guy either. Just one quick question. There may be a little error. Why is Fitzgerald not a party to this lawsuit? It's a good question, a fair question. That would ultimately be a question for her and her counsel to decide. I am aware that she brought a state law came against Motter, and I'm aware that she had a change in counsel shortly before the statute of limitations. And other than that, I can't speculate as to why she or her counsel chose not to bring it. She brought a state court lawsuit against her relative who had the dog, but not against the officer Ehart? Not against the officer Ehart. Because she was bitten too, wasn't she? She was. And I think that for Mr. Steeve to prevail on his state created danger claim, we have to successfully argue that the facts here alleged as to Ms. Fitzgerald would support such a claim. And I say that in the brief, because we are proceeding as rescuers. And if there was not a violation of the state created danger doctrine as to Ms. Fitzgerald, if there was no constitutional violation as to her, I don't know what leg we have to stand on as rescuers. Can I ask you about the claim kind of as to her as you're framing it? What is the affirmative action there that you're resting on that's as to her? Well, I think there are several. Factually, she was waiting in a car with my client for an animal control officer to arrive, having placed a phone call and having been on the property the night before in an outbuilding. And so she engaged to discuss the removal with Officer Ehart. And her preferred action on Dolly would have been to get back in her car, especially in hindsight. The affirmative acts begin to flow after that. Over her objections about her own safety, that she was afraid of the dog, Officer Ehart insisted that she be the one to contain the dog. He placed her in – So like strongly asking is the affirmative act? I would – well, it's one, but I don't know if I would characterize it as wrongly asking. Well, I said strongly asking. I'm trying to think, you know, what do we consider insisting? It's not quite ordering. She's not ordered to do this under, you know, some sort of threat of law. I don't know that an animal control officer has a power of arrest. Right, right. I don't know the answer to that question. What I do know is that the dog was known to be dangerous by everyone in the equation. Fitzgerald could have just said, I'm not going to do that. That's why I'm calling you out here. You do that. Perhaps. That would have left the dangerous dog on the property where she sometimes slept overnight. She felt that, for her relative's sake, the dog needed to be removed. It was creating problems. Right, but that's her action. I guess one formulation of his, of the affirmative act, would be that the officer did not fulfill his legal duty to keep the circumstances safe and that it was his reasonable and there was a reasonable and foreseeable bad outcome if he failed to do that. Is that the argument that you would have in that regard? I think it is. Whether he insists, whether he could threaten arrest, by placing her in that role, by asking her to do that role, he certainly increased the danger that she would be subject to. I think that when an officer, uniformed, whether a sworn officer or not, and she's an animal control officer, not a police officer, uses that authority, there is a compulsion to act. How we respond to authority is typically not to say, I'm not doing that. What's your best case that you think is analogous to this situation in your favor? Well, I've only found two in their district court cases. And I think that from the two, the Pagan versus Rivera is the closest analog that we have, where there's a danger and the state says, I'm not going to handle that danger. Go in, put yourself, do something, creates a risk, and there's an attack. Where is that case from? That is from the District of New Jersey. That's the New Jersey case, where the mother goes in and then the daughter has to go in because the police officer is sitting around? That's correct. And the mother could have said, no, I'm not going in, but she went in because she was following the instructions of the officer. There's no indication in that case that there was a threat of arrest or anything else. It was simply the use of the authority. So how about a case, like just taking a different situation, where an officer is going to arrest somebody for drug crimes and things like that and ask them, like, hey, maybe instead of arrest, do you want to be a confidential informant? And, you know, obviously there's asking, like you mentioned, although there's a little more coercion here in my hypothetical than in your case. And the person agrees. I said, sure, I'll do it. And as part of this, I know that I have to testify against whoever I'm informing on. If that person is then harmed after they testify or things like that, is this a state-created danger against them? Because they were asked to do this and even maybe asked under, you know, kind of like a threat of arrest for their drug crimes. I hadn't considered that hypothetical, but my instinct is that that would fall more on the side of direct state action, that you are enlisting someone not to handle some moment that you're called for, but to say, I would like you to be part of law enforcement on an ongoing future role. And that assumption of risk probably makes that hypothetical more like direct state action, which this court dealt with in the Rhodes case, for instance. So what about like if you're then harmed by, you know, one of the drug dealers you testified against? So it's private action that harms you. Of course, there is a difference with the drug person. Instead of an acute event, there is an entire course of conduct the person is being asked to engage in, and so that person has time for reflection and consideration before proceeding, whereas in this instance, there's a dangerous dog incident that was about to occur almost immediately, so it's really kind of different factually. Well, I think Your Honor is absolutely correct that there is time to reflect. If one assumes the role of being in this hypothetical a confidential informant, you might have second thoughts. You might get back to your community and say, I think maybe I would rather just face my charges. We are going to be asked to explain whether the state-created danger doctrine applies to your client, because your friend on the other side I expect will argue that your client placed himself in harm's way by getting out of the automobile where he was safe and he didn't have to do that, and so then why would the doctrine apply under those circumstances? For the same policy reasons that underlie the rescuer doctrine in tort law. My friend did argue that. The district court concluded that in her opinion, and the reason why my client did that is because that's what humans do. Someone you care for is under attack. Let me ask you this. I mean, even assuming that we were to find that there was a constitutional violation here by the animal control officer, what's your answer to the fact that, wait, though, you don't satisfy the second prong of Section 1983 of showing this was a clearly established constitutional right? Because there's no case that clearly establishes that anything like this situation would have been a constitutional violation. Can you cite me a case that makes this clearly established? I cannot, and this may be the war I lose if I win the other battle. But the argument that I've suggested to the court is this, that the state-created doctrine, danger doctrine itself is clearly established. I don't know that we'd be asking the same kind of question. That's at a high level of generality, and the courts constantly tell us we can't look at things at a high level. We have to apply it to your situation. I understand, and I agree. But I think what distinguishes this doctrine is the state of mind requirement. The level of culpability that a state actor must have is extraordinary. They must have knowledge of facts from which they can infer that there is a substantial, not absolute, but substantial risk of serious harm, and they must form that inference. And I think it's that last phrase, and they must form that inference, that creates a state of mind that asks us reasonably, why would we cloak that actor ever with qualified immunity? If you've gone that far, if you've formed that inference and you are proceeding, especially when there's time to act, I'm going to put this person at risk, even though I know the facts, there's an inference to be drawn, I've made that inference, I'm still proceeding. Why does that state actor need clearly established, factually similar circumstances? It seems to me that almost in every instance this will be a circumstance where, even without a predicate decision with similar facts, the actor will know that what they are doing exceeds the boundaries and violates the constitutional rights of the person involved. And so my argument is simply that the unique circumstances required to get to liability at all negate the need for the qualified immunity doctrine. Would your argument on the clearly established problem be different as to Fitzgerald, as it is for Steve? They're different arguments, but they're similar. Obviously, she's the direct victim, so we wouldn't have the question of, is it well established that rescuers are protected? We wouldn't have that. But otherwise, it would be the same. Yeah, I mean, my sense is that when we ask about clearly established and qualified immunity, I think that the Supreme Court has been quite clear on it. We're asking, you know, based on what the officer knows at the time that they're asking, that they're acting, excuse me. Here, it's maybe asking, you know, and if they know that is wrongful when they're doing it, if it's clearly established that their action is wrongful, kind of different collateral consequences may not change the analysis a ton, given that what we're really asking is, you know, does the officer know that the action that they are taking is wrongful in the moment that they're taking, or should they know? Well, I think the Supreme Court may have recently invited us to broaden the inquiry. I apologize. I don't have the name of the case that was decided 60 days ago or so, but it involved an officer on the side of a vehicle. And the question is, do you look at the officer's conduct in that, right before that moment, or is a broader inquiry more appropriate? And so I think, as to Officer Ekhart, the broader inquiry would be, what do you know about this dog from prior removals, from returns, from experiences? We're saying that's what created the fear in him that led him down this path to make these choices, to put these people at risk. So I think that every public official should know that they are surpassing the bounds of the 14th Amendment. When they assess danger, see danger, believe there's danger, and act anyway, in the absence of some immediate need to act, or in the absence of some balancing factor where we're not going to second-guess. Berkowski was that kind of case, where there was a number of, not Berkowski. There was a police standoff case, and you could argue it both ways, and we said that was not outrageous conduct. I know you're out of time, but, you know, as to how he breached any legal duty or responsibility, to the extent that we need to take account of that in connection with your argument. I don't know that it's in the record below, but it is factually accurate that animal control officers in Michigan must undergo training. We do allege that he's an experienced officer. He's recently retired. The duty is not specific to his job, I would suggest. The duty is contained within the doctrine that whatever you are doing, if the facts suggest that you are placing people in danger, you need to be mindful of doing that. And if you've reached the conclusion it's likely to happen, you shouldn't proceed. What I will say is this. Embedded in that question, and in some of the fact pattern here, is that this was an officer who had been telling his supervisors for years, I'm not adequately equipped. I need a gun. I need something to be able to deal with a situation like this, and never received it. Now that's embedded in the Minnell claim as well. But I think that the officer understood he had a duty to protect, to prevent this kind of harm, that he would be called upon to handle an attack if an attack occurred. And so I think those duties are inherent in the job. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Patrick Patterson on behalf of Appellees E. Hart and the City of Battle Creek. Appellees ask this Court to affirm the District Court's ruling dismissing Appellant's case. As Appellant has made insufficient allegations to state a claim on which relief can be granted, he has failed to allege facts which apply as to him related to the state created danger doctrine. And there can be no relief under that doctrine for his failure to allege those facts. Of course, what they're alleging is that the injuries and damages to the plaintiff would not have occurred but for the behavior and actions of the officer who was acting in his official capacity. Yes, Your Honor. And in the context of Michigan's specific rescuer doctrine, this is a tort liability doctrine which allows for individuals under state tort law to gain causes of actions against tort feasors. Appellant is asking for this state tort doctrine to be elevated and give a cause of action to individuals in substantive due process. And this Court and the Supreme Court has said that Section 1983 is not a vessel to bring state tort law claims. But that's what Appellant is attempting to do by marrying Michigan's rescuer doctrine to Section 1983's state created danger claim. Yeah, but under Section 1983 there has to be state action and certainly they have that here. As alleged, and one thing I would like to note is that there has been no discovery in this case. So we're relying completely on the recitations of facts by the appellant. Don't you think it was kind of premature for the district judge to throw this out without any discovery to find out really what happened and who was responsible? Well, Your Honor, because appellant had not alleged facts that under the state created danger doctrine would have applied to him, there was no affirmative action as to him. There was no special danger as to him. There was no culpability as to him. The animal control officer had no interaction with Steve. Well, how can you say that when it was completely foreseeable that if the woman outside the vehicle was being attacked by the dog and was about to be ripped to shreds and the plane, the safe inside the automobile is completely foreseeable that he might get out of the vehicle to try to intervene to save the woman? Well, Your Honor, under a state tort claim. And that's compounded by the fact that the officer didn't take any action to protect anybody. Your Honor, under Sixth Circuit precedent in Engler v. Arnold 862 F3D 517, an inaction is not an affirmative act under the state created danger doctrine. Even if the state officer has an affirmative duty based on the duties and responsibilities of his position? Well, Your Honor, in this particular instance, when the animal control officer had initially arrived on the scene, there was no indication and it was not foreseeable that the dog at that time was exhibiting any aggressive tendencies. Yeah, but that was the reason that the animal control was called in the first place. And the facts of the case indicate that the dog had previously attacked people. And, Your Honor, in response to that, typically we don't question officers' split-second decisions. And there would be an opportunity that there was a plan put forward to mitigate the aggressiveness of the dog and the chance for someone to be harmed by handling the dog through the interaction and through the plan that appellant had cited to that the animal control officer and Fitzgerald, who was known to the dog and did know the dog, put together to get the dog safely into the back of the animal control. Would you agree with your friend on the other side that there's an affirmative act as to Fitzgerald? I mean, most of your argument has been about duty as to Steve. But take that to the side for a second. Was there an affirmative act here at all? I would contend that there would not have been an affirmative act in this particular instance unless this court were to find that merely communicating with someone to plan on how to appropriately handle the animal. Well, how about insist? The complaint here, which you said is what we happen to work off, the complaint here says insist. She expresses reservations, apprehension about wanting to deal with this dog that everybody knows is very dangerous, and your client insists. Is that an affirmative act under our jurisprudence? I would say that there is no evidence that that's an affirmative act under the jurisprudence. And so what cases? What would you have us look to to figure out whether that's an affirmative act? Well, Your Honor, I believe in the briefing that we cited too, typically insistences or things of that nature can become affirmative acts if there are consequences that can be suffered for refusing to follow through with that insistence. But animal control officers have no authority to arrest. They have no authority to prosecute if someone does not want to deal with an animal. There are no consequences for Fitzgerald to suffer if she said, I don't care what you're insisting. I'm not going to deal with this dog. And as part of the underlying record, the insistence that Fitzgerald was supposed to deal with the dog and had to, appellant never really tells the district court or this court why Fitzgerald felt compelled to do so other than the animal control officer was in a uniform. That is the only sort of reason that appellant proposes is why Fitzgerald felt compelled to follow the, quote, insistence as appellant states. And under the Sixth Circuit precedent in regards to officers, uniformed law enforcement officers compelling people to act, this doesn't meet that burden. It's not analogous. It's not the same because an animal control officer has no law enforcement authority. Yes, he was there for the legitimate government purpose of removing that animal. The underlying record is not developed because there's not been discovery as to whether or not it was a legitimate plan between Ehart and Fitzgerald to get the dog into the animal control vehicle. But appellant claims that it was just an act of cowardice. It was just a dereliction of duty. And that completely ignores that there would have been legitimate reasons and legitimate purposes to have someone familiar. Well, at this stage we're on a motion to dismiss. Yes, Your Honor. And we're construing the complaint in the light most favorable to the plaintiff, and you seem like you'd have great arguments at the next stage. But let's keep for where we are here, right? For where we are here, what they allege is she doesn't want to do it. Ehart insists. He might have good reasons. He might not. It might be cowardice. Right now we're construing for your opponent. Yes, Your Honor, and I don't agree that that would be an affirmative act. And I don't agree that there would be any of the elements under the state-created danger doctrine that would have been met as to appellant, and several of them would not have been met as to Fitzgerald, who Your Honor pointed out previously that is not a party to this case because she filed in state court under Michigan's strict liability dog bite statutes, which appellant also enjoyed the benefit of. And in this particular matter, appellant wants to be able to use Michigan's tort rescuer doctrine to co-opt all of the facts as they apply to a third party. And the non-binding precedent that is cited in Pagan, the New Jersey District Court turned on the fact that the offender, in that particular instance, had also threatened, and it was also known that he was a danger to the person who went in second when the officer failed to do it. That is a set of facts as applied to that person, not merely that a third party was placed in a state-created danger and then the rescuer gets to co-opt all of those facts as applied to them. And in Huber, there was no rescuer application because the Wisconsin District Court looked at the totality of the case. Is there no situation where you would think the rescuer doctrine could apply in the 14th Amendment claim? Like, let's say, think of a horrible, horrible scenario where the school principal sets fire to their building, right? This is an affirmative state act that would meet the first prong, right? And, you know, the parents seeing this, you know, would you say, oh, they voluntarily did this, just like Steve. Well, you know, he got out of the car to try and save Fitzgerald. He didn't have to do that. Is there no situation where you would say that the state-created danger extends to someone who isn't kind of the first line of victim? I think that it would be very difficult to do so because of the additional requirement of culpability, the conscious shocking behavior as it relates specifically to the state actor's conduct towards the individual victim. And in that hypothetical, and in this case, there has been no requisite degree of culpability shown. So in my hypothetical, you would say, well, the principal who burned down the school had culpability, had a mental state as to the children but not as to the parents. Is that what you're telling me? Yes. In the event, Your Honor, that if the desire for the principal was to also have hurt the parents, injured the parents, when they go in, then the requisite culpability would apply. Do they actually have to desire it? They just have to know the facts and make that defense that there could be a substantial harm, right? Yes, Your Honor. So take another scenario. And we have all these cases, right, where there are undercover cops and, like, a city, you know, or somebody releases, the state releases the name of the undercover cops and undoubtedly put the undercover cops themselves in danger from the drug dealers or whomever that they're investigating, right? Let's say one of these drug dealers goes and finds the home of one of the undercover cops and goes to kill the undercover cop, goes there and instead, you know, shoots through the house and instead kills the babysitter, right? Are you saying in that case, too, there's no state affirmative act that there would be a 1983 claim for? I think that that might approach a little closer, but my position would be that there would be alternate forms of recovery and substantive due process under the State Created Danger Doctrine looks specifically under our precedent. What would that alternate form of recovery be? In the context of Michigan, we have several avenues of tort liability for specific actions like this, specifically dog bite statutes. We have the Governmental Tort Liability Act, which allows for plaintiffs to recover for gross negligence and other specific derelictions of duty. And one of the main contentions that we make in response to appellant is that appellant is trying to use our state tort law, which should be applied and would have stronger arguments under Michigan's state tort laws and claims, to substantive due process. To Section 1983, when that avenue of gaining a cause of action for a rescuer is not anywhere within the Sixth Circuit's precedent. It's not anywhere within a different circuit's precedent aside from the two district court cases that appellant cited to. And that means that there is no clear constitutional right in this particular instance for a rescuer to gain a cause of action under the State Created Danger Doctrine. Anything further? Nothing further. All right, thank you. Any rebuttal?  Briefly, I see no basis to limit this court's or any other court's ability and right to consider the policy arguments from the state tort law in evaluating the constitutional implications of this case. We are not attempting to say that because there was a tort law in Michigan and 50 other states, 49 other states, that that binds this court or any federal court in interpreting the U.S. Constitution. That's not what we're doing. And the court will note that I didn't even cite any state law until my reply brief, hoping it would provide guidance on a couple of topics. But it is not binding. It is not trying to create a state tort claim in this federal system. But courts that have considered the issue, the two that I've cited, have looked to what the rescuer doctrine says under tort law, and I think it's appropriate. I think we're asking this court to answer the fundamental question, what are the protections under the 14th Amendment for rescuers? And in the absence of authority anywhere else, looking at the policy decisions that underlie the tort doctrine should be helpful to this court, but certainly not binding. We're simply not trying to do that. I'd also like to speak to the notion of consequences for not performing when Ehart insisted. It's more than just this officer showed up with a badge. This animal control officer showed up with his truck. This officer showed up after Fitzgerald had already interacted with a uniformed police officer who had come and said, stay tight, the animal control person is coming. There was an abundance of authority that day that suggested to Fitzgerald that she needed to act. And I'll also say that asking, insisting, however you label it, was not the only act by Ehart. He asked me the question, what are the affirmative acts? We got sort of stuck on that one. But he also left the vehicle and instructed her, here's how you do this. Here's my cage. Here's my truck. You're going to put this dog in this truck, no leash, no boom pole, no way of controlling this. And he did that knowing from his prior experience with the dog and the prior removal of the dog just how dangerous it was. So I think there's more here than just an ask or an insist. And the insist is more than just he happened to be in uniform. I think he carried the weight of the state with him in his vehicle, in his uniform, in his badge, in the instructions from the other officer who arrived first. And I would just simply say the complaint does not allege a plan. If there's a plan alleged in the complaint, it's Mr. Steeve's plan to keep himself as far away from that dog as he possibly could. And that plan he was successful on in large part. Thank you. Is there any further questions? No, thank you. And the case is submitted.